## Case No. 14,777.

### UNITED STATES v. CHALONER.

[1 Ware, 214.] [1]

District Court, D. Maine.    June Term, 1831.

POST-OFFICE—PROHIBITION OF PRIVATE CARRIAGE OF MAIL—PACKETS.

The 21st section of the post-office act of March 3, 1825 [4 Stat. 107], which prohibits persons concerned in carrying the mail, from carrying letters or packets, does not prohibit their carrying a package containing executions, and nothing else. By the term packet, in this section, is meant a packet containing letters, and not a package containing other articles.

This was a suit brought by the United States to recover a penalty of fifty dollars against the defendant, for an alleged violation of the act of congress of March 3, 1825, entitled "An act regulating the post-office establishment." It was submitted to the decision of the court on the following agreed statement of facts: "That the defendant was a mail carrier from Machias, through Eastport, to Calais, and that on the day specified, his driver took from Eastport certain packages, containing executions, and nothing else, and carried and delivered them to the persons at Calais named in the writ—judgment to be entered in favor of the United States, if in the opinion of the court, the action, on these facts, is maintainable—and if not, then for the defendant."

The District Attorney, for the United States. George W. Pierce, for defendant.

WARE, District Judge. This action is brought to recover a penalty under the 21st section of the post-office act of March 3, 1825, c. 275 [3 Story's Laws, 1991; 4 Stat. 107, c. 64]. The terms of the penal clause are that, "if any person concerned in carrying the mail of the United States, shall collect, receive, or carry any letter or packet, or shall cause or procure the same to be done, contrary to this act, every such offender shall forfeit and pay, for every such offence, a sum not exceeding fifty dollars." This section contains no description of the offence. It is the naked enactment of a penalty, and the nature of those acts by which it is incurred must be sought in other provisions of the law. The 20th section of the act directs the mail carriers, on receiving any way letters,

[1] [Reported by Hon. Ashur Ware, District Judge.]

and they are bound to receive them if presented at a greater distance than one mile from a post-office. to deliver them at the first post-office at which they shall afterwards arrive. It was not contended that these packages which contained executions and nothing else, without any letter accompanying them, fall within the letter of this section. The 14th section provides, "that no stage or other vehicle which regularly performs trips on a post-road, or a road parallel to it, shall carry letters, nor shall any packet-boat or other vessel which regularly plies on a water declared to be a post-road, except such as relate to some part of the cargo. For a violation of this provision, the owner of the carriage or other vehicle or vessel shall incur the penalty of fifty dollars." The prohibitive words of the section apply to all carriages of whatever kind which perform regular trips on a post-road, and must be understood to include carriages employed under contracts with the postmaster-general, for carrying the mails, as well as others not so employed. But the prohibition is restricted to the carrying of letters. There is nothing in this section which, taken at the letter, renders it unlawful for a mail or other coach to carry packets. It is, however, contended that this section is to be interpreted in connection with the 21st, and other parts of the act, and that by the true construction of the law, taken in all its parts. packets as well as letters are included within the prohibition. By the 21st section, a penalty is incurred by carrying packets, and unless the prohibition of the 19th is extended to packets, this word in the 21st will become inoperative. Packets also are, it is said, as much within the reason of the act, as much within the mischief intended to be prevented, as letters. If by simply including two or more letters in one envelope, the law may be eluded, the whole policy of this section of the act may be defeated and the prohibitory clause rendered a dead letter. The intention of the law is, to prohibit the conveyance, especially in the mail coach, of all letters and packets which may by law be carried in the mail, which includes all packets, of whatever description, weighing not more than three pounds. Section 13. The 6th section is referred to in support of this view of the law. That directs every master or manager of a steamboat which shall pass from one port or place to another port or place in the United States where a post-office is established, to deliver all letters and packets addressed to a resident of such place. to the postmaster there, under a penalty of thirty dollars. Why should a steamboat be required to pass packets through the post-office, if a stage is not? The reason is apparently quite as strong in the latter case as in the former.

The answer given to this argument by the counsel for the defendant is. that in the penal clause of the 21st section, on which this action is founded, the meaning of the word packet is restricted to packets of a single kind, that is, those which contain letters. It is very clear that the word is not uniformly, or indeed most usually, taken in this restricted sense, in the act. In the 13th section, which establishes the rates of postages, packets are mentioned containing four or more pieces of paper, or one or more other articles, and are charged with quadruple the postage of a single letter; and in the 21st section, the word occurs four times where it is manifest that the meaning cannot be restricted to packets of letters. Packets containing articles of any description may be conveyed in the mail, provided their weight does not exceed three pounds. The argument for the plaintiff is, that wherever the word is used without qualification, it is to be taken in its most general sense, and that when the meaning is intended to be restricted to packets of letters, the qualifying word. letters, is used. as in the 6th and 13th sections. Admitting this to be the true construction of the statute—and if it be not conceded. I think it would be difficult to maintain it—it will still remain true that the court, to inflict the penalty in this case, must extend, by implication, the operation of the 19th section. Packets are not within the words of the prohibition. at least packets containing other articles than letters. A packet containing, in an envelope. several letters, is clearly within the intention of the act. and I think fairly within the letter. But this question is not before the court, as it is admitted that the packets, in this case, did not contain letters. But it appears to me that instead of interpolating the word "packet," in the 19th section, to make this conform to the 6th, the ordinary rules for the interpretation of penal statutes would lead us to restrict the meaning of the term in the 6th section, to packets of letters. That this is the true meaning of the term in this section, and not a mere juridical refinement to curtail the operation of a penalty, appears to be morally certain from the last clause of the section. In the first clause, the master of a steamboat is required to deliver all letters and packets to the postmaster. on his arrival at a place where there is a post-office. and in the last clause it is provided that every person employed on board any steamboat shall deliver every letter and packet of letters intrusted to such person, to the master, for the purpose of being delivered to the postmaster. Here. the persons employed on board of a steamboat, other than the master, are required to deliver to him only such packets as contain letters. All other packets. therefore, they are permitted to take charge of and deliver, without passing them through the post-office. If the owner may do this, why should the master be prohibited from it? The language of the last clause ought to be taken as the interpretation of the word in the first. where it is used without qualification. This construction of the 6th section renders the prohibition of

that, coextensive with that of the 19th, and by interpreting the word packet in the 21st, to mean packet of letters, it places all the parts of the statute in harmony with each other. It appears to me that this interpretation coincides with the policy, and fulfils all the intentions of the law. It can hardly be supposed to be the intention of the legislature to impose a charge of postage on all small packets which it may be convenient for the citizens to transmit from place to place in stages and steamboats; at the same time, when the owners choose the conveyance by mail as most certain, or most safe, they are protected while in the mail by the same penalties, and charged with the same postage as letters.

This view of the law is confirmed by comparing the 19th section with the corresponding section in the previous postoffice laws. It is taken, but with material alterations, from the 16th section of the act of 1810, c. 54 [2 Story's Laws, 1160; 2 Stat. 596, c. 37]. This provides that if any other person than the postmaster-general, or the person by him employed, shall be concerned in setting up any horse or foot post, stage, &c., on any established post-road, or one parallel or adjacent to it, or from one post town to another, or any packet-boat or other vessel, to ply regularly from one place to another, between which a regular communication by water shall be established by the United States, and shall receive and carry any letter or packet, other than newspapers, magazines, or pamphlets, the owner shall forfeit for every offence the sum of fifty dollars. This section of the act of 1810 is borrowed without alteration from the 12th section of the act of 1799, c. 149 [1 Story's Laws, 691; 1 Stat. 735, c. 43]; and that again from the 14th section of the act of 1794, c. 23 [1 Stat. 360]; and this, with unimportant alterations from the first general act regulating the post-office establishment, in 1792, ch. 7 [Id. 232]. From the commencement of the post-office establishment, or rather from the date of the act of 1792, it has been unlawful for stages performing regular trips on a post-road, to carry from place to place any other packets than those containing newspapers, magazines, or pamphlets. In the revision of these laws by the act of 1825, the word packet is dropped. There appears to be no reason to doubt that it was omitted ex industria, and not unlikely for the purpose of making law conform to what is understood to have been the universal usage from the first existence of the post-office establishment. At all times the stages have been accustomed to carry, for the citizens living on mail routes, small packages of merchandise. This practice is of very considerable convenience to the citizens; it can impair but in a small degree the revenue of the post-office, for if these packages were charged with postage they would ordinarily not be sent by the stages, and it does not, therefore, appear to be opposed to the policy of the law. On the facts agreed on in the case, my opinion is that judgment must be rendered for the defendant.

## Case No. 14,778.

### UNITED STATES v. CHAMBERLAIN.

[12 Blatchf. 390.] [1]

Circuit Court, S. D. New York. Dec. 22, 1874.

**CRIMINAL LAW—EVIDENCE—HANDWRITING—OTHER WRITINGS—COMPARISONS—EXPERT TESTIMONY.**

1. On the trial of an indictment for depositing scurrilous postal cards in the mail, the cards put in evidence displayed characteristic instances of misspelling, and it was *held* to be competent to prove other writings of the defendant's, containing identical errors in spelling, for the purpose of connecting the defendant with the cards which formed the subject of the charge.

2. It was, also, *held* to be incompetent to test the knowledge of an expert in handwriting, by placing before him irrelevant papers, for the mere purpose of contradicting his testimony as to the handwriting thereof.

[Cited in Springer v. Hall, 83 Mo. 698.]

3. It was, also, *held,* to be competent for the jury to compare the handwriting of documents properly in evidence, and proved to have been written by the defendant, with the handwriting of the cards in dispute, for the purpose of ascertaining the origin of the cards.

4. It was, also, *held,* that, standard specimens of the defendant's handwriting being in evidence, an expert might point out to the jury features in the writing of such specimens, identical with those displayed by the cards in question.

Ambrose H. Purdy, U. S. Asst. Dist. Atty. William Fullerton and William H. Waring, for defendant.